AO 106 (Rev. 04/10) Application for a Search Warrant

FILED
RICHARD W. NAGEL
CLERK OF COURT
2017 SEP 19 PM 4:06
U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WESTERN DIV. DAYTON

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
429 Mertland Avenue, Dayton, Ohio 45431

Case No. 3:17 mj 440

SHARON L. OVINGTON

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A

located in the Southern District of Ohio, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. 841(a)(1) | Distribution of Controlled Substance |
| 21 U.S.C. 846 | Conspiracy to Distribute Controlled Substance |
| 18 U.S.C. 1956 | Money Laundering and Conspiracy to Commit Money Laundering |

The application is based on these facts:
See Attached Affidavit

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ____ days (give exact ending date if more than 30 days: __________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

[signature]
*Applicant's signature*

Alex P. Hillman, Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9-19-17

[signature]
*Judge's signature*

City and state: Dayton, Ohio

Sharon L. Ovington, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF SEARCH AND SEIZURE WARRANT

Alex P. Hillman, a Task Force Officer of the Drug Enforcement Administration, United States Department of Justice (hereinafter referred to as the "Affiant"), being duly sworn, deposes as follows:

## INTRODUCTION

1. Affiant is a Task Force Officer with the Drug Enforcement Administration (DEA), and has been since October, 2014. Affiant is a Detective with Troy Police Department (TPD) and has been employed by TPD since 2003. Affiant has conducted and participated in complex drug trafficking conspiracy and money laundering investigations which have resulted in arrests; execution of search warrants that resulted in the seizure of narcotics, narcotics proceeds and other evidence of narcotics trafficking activities; and supervised the activities of cooperating sources (CS) that have provided information and assistance resulting in narcotics purchases. Through training and experience, Affiant is familiar with the manner in which persons involved in the illicit distribution of controlled substances often operate. They usually attempt to conceal their identities, the locations at which they reside, and where they store controlled substances and the illegal proceeds derived from their drug trafficking activity. Through training and experience, Affiant is familiar with the practices of narcotics distributors, whereby they attempt to conceal the true nature, source, and location of proceeds of illegal activity, commonly referred to as money laundering. Affiant has received training on numerous subjects related to the internet, social media, smart phones, smart phone applications, SMS/MMS, cellular phone tolls, Title III intercepts, Penlink, and computer programming languages. Affiant is familiar with and has working knowledge of the internet, social media websites, online commerce, smart phones, smart phone applications, SMS, and MMS. Affiant has personal accounts of and is a daily user of the aforementioned items. I have utilized mobile tracking devices (MTD) in the past and have analyzed the data collected from such devices.

2. Along with other agents and task force officers of the DEA and other agencies, your Affiant is currently involved in an investigation into a Drug Trafficking Organization (DTO) regarding the distribution of narcotics, and conspiracy to do the same, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, as well as money laundering and conspiracy to do the same, in violation of Title 18, United States Code, Section 1956. This Affidavit is submitted in support of an Application for a Search Warrant authorizing the search of the following premises, more particularly described in Attachment A, incorporated herein by reference, for the items described in Attachment B, incorporated herein by reference: **429 Mertland Avenue, Dayton, Ohio 45431** (hereinafter referred to as the "**TARGET RESIDENCE**").

3. As outlined below, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) and 846 (distribution of controlled substance and conspiracy to do the same), and Title 18, United States Code, Section 1956 (money laundering and conspiracy to do the same) are being committed, and that evidence, fruits, and

instrumentalities of these violations, as well as contraband, as set forth more fully in Attachment B, is presently located in the **TARGET RESIDENCE**.

4. Affiant is familiar with the facts and circumstances described herein and makes this affidavit based upon personal knowledge derived from Affiant's participation in this investigation, conclusions affiant has reached based on Affiant's training and experience, and upon information Affiant believes to be reliable from the following sources:

A. Oral and written reports about this investigation and other investigations, which affiant has received from federal agents and agents from state and local law enforcement agencies;

B. Physical surveillance conducted by federal and local law enforcement agents, the details of which have been reported to affiant either directly or indirectly;

C. Information developed from cooperating sources;

D. Public records;

E. Recorded calls made by undercover agents;

F. GPS location data received from court-authorized search warrant.

The information contained in this Affidavit is either personally known by affiant or relayed to affiant by other law enforcement officers involved in this investigation. This affidavit does not contain all facts known to Affiant, only those necessary to establish probable cause in support of the requested search warrant.

## FACTS SUPPORTING PROBABLE CAUSE

5. Affiant is currently assisting with the investigation of a DTO that is transporting cocaine and other controlled substances into the United States. This DTO is also utilizing couriers in the Dayton, Ohio area to collect drug proceeds, in the form of bulk US Currency, and transport it to known and unknown cooperators for the purpose of laundering it back to Mexico. This organization has multiple targets located throughout the country including, but not limited to, California and Ohio. This investigation is an ongoing investigation which was initiated by DEA Los Angeles. Throughout the investigation, DEA offices across the United States have seized more than one thousand kilograms of cocaine which were under control of the DTO.

6. On September 13, 2017, DEA Columbus was contacted by DEA Los Angeles and advised that DEA Los Angeles had received a contract to pick up approximately $100,000.00 in drug proceeds in Ohio. Members of DEA Los Angeles provided (513) 208-8041 as a contact number for the person in possession of the money in Ohio.

7. On September 13, 2017, an undercover officer (UC), acting under the authority of the DEA, made contact with (513) 208-8041 and spoke with an unknown Hispanic male, later

identified as Antonio ROYAL-Acosta. During the conversation, ROYAL-Acosta told the UC that he could meet the UC in Dayton, Ohio, but did not want to drive to Columbus because he did not have a license.

8. On September 13, 2017, DEA Los Angeles obtained a search warrant authorizing the acquisition of location information for the telephone using (513) 208-8041. The location data showed the phone was located at 553 St. Paul Ave, Dayton, Ohio.

9. On September 14, 2017, DEA Columbus contacted DEA Dayton and advised the particulars of the upcoming money pick up. DEA Dayton then initiated surveillance on 553 St. Paul Avenue. At approximately 11:41 a.m., members of DEA Dayton received location data which placed the (513) 208-8041 phone at the 553 St. Paul Avenue. At approximately 11:49 a.m., members of DEA Dayton observed ROYAL-Acosta exit 553 St. Paul Avenue, enter the passenger seat of a Chrysler Pacifica displaying Ohio license plate EUV8325, and depart the area. At approximately 11:55 a.m., members of DEA Dayton received location data which showed the phone was moving in Dayton, in tandem with the Chrysler Pacifica.

10. At approximately 12:12 p.m. on September 14, 2017, DEA Dayton received location data which showed the phone was located at the **TARGET RESIDENCE**. DEA Dayton then established surveillance of the **TARGET RESIDENCE**.

11. On September 14, 2017, at approximately 12:30 p.m., the UC made contact with ROYAL-Acosta again and they agreed to meet at the Meijer located at 9200 N. Main St., Dayton, Ohio. At approximately 1:15 p.m., members of DEA Dayton observed ROYAL-Acosta leave the **TARGET RESIDENCE**, enter the passenger seat of the Chrysler Pacifica, and depart the area. Members of DEA Dayton conducted surveillance on the Chrysler Pacifica for a short distance, but were not able to maintain surveillance.

12. At approximately 1:41 p.m. on September 14, 2017, DEA Dayton received location data which showed the (513) 208-8041 phone was located at the Fairfield Mall located at 2727 Fairfield Commons Blvd., Beavercreek, Ohio. At approximately 1:55 p.m., members of DEA Dayton located the Chrysler Pacifica parked in a handicapped spot, unoccupied, directly in front of the mall. Members of DEA Dayton then established surveillance on the Meijer Parking lot located at 9200 N. Main St.

13. At approximately 2:45 p.m. on September 14, 2017, the UC made contact with ROYAL-Acosta, who stated he would have his courier waiting at the meet location, in a black 2008 Honda Accord. ROYAL-Acosta then called the UC back and stated that his courier was standing outside his vehicle, but could not find the UC. At approximately 3:54 p.m., ROYAL-Acosta told the UC that his runner was actually at the Meijer located at 3822 Colonel Glenn Highway, Fairborn, Ohio.

14. At approximately 4:08 p.m. on September 14, 2017, members of DEA Dayton located a Hispanic male parked in the area of Meijer in a black 2008 Honda Accord. The individual was later identified as Joel GONZALEZ-Gomez. At approximately 4:23 p.m., the UC made contact with ROYAL-Acosta, and stated that GONZALEZ-Gomez was at the wrong

Meijer, and asked that GONZALEZ-Gomez move to the Meijer located at 9200 N. Main St. Members of DEA Dayton then observed GONZALEZ-Gomez drive from the Meijer to the Fairfield Mall, exit the driver's side of the vehicle and enter the passenger seat. Members of DEA Dayton then observed ROYAL-Acosta enter the driver's seat of the vehicle and leave the area.

15. At approximately 4:50 p.m. on September 14, 2017, Ohio State Patrol conducted a traffic stop on ROYAL-Acosta, driving the black Honda Accord. During the traffic stop a K9 alerted to the presence of narcotics in the vehicle, and a probable cause search of the vehicle was conducted. During the search, ROYAL-Acosta and GONZALEZ-Gomez were found to be in possession of a large amount of bulk U.S. Currency.

16. During a post-Miranda interview with ROYAL-Acosta, he stated that he was working for an unknown Hispanic male who gave him the bag, and asked him to distribute it to an unknown male at the Meijer located at 9200 N. Main St. ROYAL-Acosta also stated that he was at the **TARGET RESIDENCE** earlier the same date, had a key to the **TARGET RESIDENCE**, had a bag of clothes at the **TARGET RESIDENCE**, and was allowed to enter the residence at any time he pleased, but GONZALEZ-Gomez was the only one regularly living at the **TARGET RESIDENCE**. ROYAL-Acosta then signed a consent to search for the **TARGET RESIDENCE**.

17. During a post-Miranda interview with GONZALEZ-Gomez, he stated that he was working for ROYAL-Acosta, and that ROYAL-Acosta gave him the bag, and told him to drive to the Meijer to deliver it to an unknown male. GONZALEZ-Gomez stated that he looked inside the bag and saw that it was a large amount of U.S. Currency, but did not know what it was for. GONZALEZ-Gomez then stated that ROYAL-Acosta called, asked to be picked up, and then asked to drive the vehicle. GONZALEZ-Gomez stated that he lived at the **TARGET RESIDENCE**, and had a key for the **TARGET RESIDENCE**. GONZALEZ-Gomez then signed a consent to search for the **TARGET RESIDENCE**.

18. Members of DEA Dayton then conducted a consent search of the **TARGET RESIDENCE** on September 14, 2017. During the search, members of DEA Dayton found the following items indicative, in my training and experience, of drug trafficking activity: a hydraulic kilogram press, kilogram form plates hidden in floor grates, bags containing white powder residue, ventilation masks hidden in a small hole cut into the wall inside a utility closet, motor grease consistent with the grease found on the exterior packaging of the bulk U.S. currency, heat seal bags, a vacuum sealer, a blender, and several fraudulent Mexican identification cards each displaying a photo of ROYAL-Acosta.

19. On September 18, 2017, members of DEA Dayton received information from DEA Louisville that ROYAL-Acosta was the target of an investigation in Louisville, Kentucky, where he was operating a house utilized for storing, and repackaging kilogram quantities of heroin. Members of DEA Louisville stated that ROYAL-Acosta utilized carpentry skills to assist with concealment of kilograms of heroin. Members of DEA Louisville stated that during the execution of a search warrant at ROYAL-Acosta's residence in Louisville, agents found kilogram wrappers containing heroin residue hidden in the wall behind the drywall, kilograms of

heroin hidden in the walls behind the drywall, and kilograms of heroin and scales hidden in the floor beneath finished tile flooring.

20. Based on information from DEA counterparts that the DTO associated with ROYAL-Acosta is known to hide drugs, drug proceeds, and criminal tools in the walls and floors of residences, during the search of the **TARGET RESIDENCE** authorized by the requested warrant, members of DEA Dayton will make entry into the **TARGET RESIDENCE** and secure the premises. Once the location is secured, a K-9 will be utilized to search for the odor of controlled substances. Upon a positive indication by the K-9, a backscatter x-ray will be utilized to determine if objects are located inside of walls, floors, or other voids in the **TARGET RESIDENCE**. In the event that objects are detected inside of walls, floors, or other voids through the procedures outlined herein, the least intrusive method of search will be performed to locate items of evidentiary value that may be contained within walls, floors, or other voids.

21. Affiant knows from his training and experience in drug investigations that drug traffickers often generate and maintain large amounts of U.S. currency, which are typically proceeds of narcotics trafficking. I also know that vehicles are often times used to conceal, transport, and distribute illegal narcotics and the proceeds of illegal narcotics. Your Affiant knows that drug traffickers use vehicles as a means of transportation to narcotics stash locations and distribution points.

22. Affiant knows from his training and experience in drug investigations that traffickers often maintain in their residences and other locations from which they conduct their drug trafficking activity, controlled substances, books, records, receipts, notes, ledgers, and other papers relating to the procurement, distribution, storage and transportation of controlled substances to include records showing the phone numbers and/or pager numbers of suppliers or customers, and other criminal associates. They frequently maintain receipts such as credit card billings, telephone bills and toll records, parking stubs, hotel reservations/records, airline tickets, gas receipts and various notes. They possess items used to package controlled substances, and bulk currency. It is also common for these drug traffickers to maintain electronic devices, to include but not limited to, mobile telephones, computers, paging devices, answering machines, police scanners and money counters to facilitate their criminal activity. These items are commonly maintained in locations to which drug traffickers have frequent and ready access, i.e. homes, apartments, businesses and automobiles.

23. It is common for drug traffickers to conceal narcotics, narcotics records, narcotics proceeds and other related items described above within their businesses, residences, and automobiles; with their criminal associates; or with other trusted individuals in order to conceal such items from law enforcement authorities.

24. Affiant knows that narcotics traffickers often purchase and/or title assets and open accounts, such as utility accounts, in fictitious names, aliases, or the names of relatives, associates, girlfriends or business entities to avoid detection of these assets and accounts by government agencies. Even though these assets and accounts are in names other than the traffickers', the narcotics traffickers actually own and continue to use these assets and accounts and exercise dominion and control over them.

25. Persons engaged in drug trafficking often take or cause to be taken photographs and/or videotapes of themselves, associates, drug proceeds or property derived from the proceeds derived from the sale of controlled substances. Traffickers usually maintain these items in their possession.

26. Affiant is aware, based on his training and experience that drug dealers frequently maintain firearms and weapons to protect both the controlled substances and proceeds derived from their sales. Drug traffickers maintain firearms as a use of force, or threat of force, against rival drug dealers and/or delinquent customers.

27. Based on the information above, your Affiant submits that there is probable cause to believe that ROYAL-Acosta and GONZALEZ-Gomez are involved with the movement bulk U.S. currency derived from drug trafficking, and the movement of multi-kilogram shipments of heroin from Mexico, and throughout the United States. Your Affiant also submits that there is probable cause to believe that the **TARGET RESIDENCE** has been used by ROYAL-Acosta and/or GONZALEZ-Gomez for the purpose of storing and repackaging kilogram quantities of heroin, and bulk U.S. Currency. Affiant submits that, based information obtained from the DEA Louisville following the consent search conducted at the **TARGET RESIDENCE** on September 14, 2017, there is probable cause to believe that fruits, evidence and instrumentalities of this criminal conduct, as described more fully in Attachment B, continue to exist within the **TARGET RESIDENCE**.

## CONCLUSION

28. Based upon the information contained in this affidavit, Affiant submits that there is probable cause to believe that ROYAL-Acosta, GONZALEZ-Gomez, and others are involved in the distribution of narcotics and a conspiracy to do the same, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and money laundering and conspiracy to do the same, in violation of 18 U.S.C. § 1956. Affiant asserts there is probable cause to believe evidence of those violations, along with the fruits and/or instrumentalities of those offenses, are located at the **TARGET RESIDENCE.**

Alex P. Hillman, Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me on September 19, 2017.

Honorable Sharon L. Ovington
United States Magistrate Judge

# ATTACHMENT A

## DESCRIPTION OF PREMISES TO BE SEARCHED

429 Mertland Avenue, Dayton, Ohio 45431 (TARGET RESIDENCE) is a single-story, single-family, detached dwelling with blue siding. When facing the front of the residence, there are two windows on the left side of the building facing the roadway. The driveway is on the right side of the building and leads to a covered porch in the front. Directly in front of the covered porch are two large bushes. The front door is white with a small, semicircular window at the top of the door, with a full window directly to the right of the door facing the street. The premises to be searched includes all rooms, attics, basements, surrounding grounds, curtilage, storage areas, voids in walls or floors, and outbuildings of any kind located in or on the TARGET RESIDENCE.

## ATTACHMENT B

## PROPERTY TO BE SEIZED

The items to be searched for and seized are evidence, contraband, fruits of crime, and other items illegally possessed, as well as property designed for use, intended for use, relating to violations of 21 U.S.C. §§ 846 and 841(a)(1) and 18 U.S.C. § 1956, including, but not limited to:

A. Log books, records, payment receipts, notes, and/or customer lists, ledgers, and other papers or electronic records relating to the transportation, ordering, purchasing, processing, and distribution of controlled substances.

B. Papers, tickets, notices, credit card receipts, travel schedules, travel receipts, passports, and/or records, and other items relating to domestic and foreign travel to obtain and distribute narcotics and narcotics proceeds, including, but not limited to airline receipts, vehicle rental receipts, credit card receipts, travel schedules, diaries, hotel receipts, truck logs, travel agency vouchers, notes, records of long distance telephone calls, e-mail and other correspondence.

C. Address and/or telephone books and papers reflecting names, e-mail and physical addresses and/or telephone numbers of individuals, partnerships, or corporations involved in drug trafficking and money laundering.

D. Financial records, financial statements, receipts, statements of accounts and related bank records, money, drafts, letters of credit, money orders and cashier's checks receipts, passbooks, bank checks, escrow documents, and other items evidencing the obtaining, secreting, transfer, and/or concealment of assets and the obtaining, secreting, transferring, concealment, and/or expenditure of money.

E. Electronic equipment such as surveillance video and related equipment, pagers, computers, electronic organizers, facsimile machines, cellular telephones, caller ID, telephone answering machines, police scanners and two-way radios, money counters.

F. United States currency, precious metals, coins bullion, jewelry, and financial instruments, including, but not limited to stocks and bonds.

G. Photographs and/or photographic albums or video tapes and recordings of houses and other real estate, automobiles, and of other assets, persons, and/or controlled substances.

H. Indicia of occupancy, residency, and/or ownership of the premises and vehicles including, but not limited to utility and telephone bills, canceled envelopes, keys, deeds, tax bills, titles, and vehicle registrations.

I. Contraband, such as illegal drugs and other materials, paraphernalia and/or equipment and tools used in the drug trade, including heat sealing equipment.

J. Firearms and ammunition.